**KALIS CLOTHING MFG. CO., Inc., v. UNITED STATES.**

No. 49429.

United States Court of Claims.

Jan. 13, 1953.

Myer J. Sawyer, Washington, D. C., for the plaintiff.

William A. Stern, II, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

On June 11, 1946, the plaintiff, at that time a partnership but later incorporated, entered into a contract with the United States Army Quartermaster Corps for the manufacture of 40,000 army overcoats for a unit price of $22.75 per garment. The informal bid of plaintiff included a breakdown of the items of cost and profit upon which the bid price of $22.75 was based. Pursuant to this informal bid a written contract was entered into for the 40,000 overcoats with removable liners for the total sum of $910,000. Article 14 of this contract, entitled "Revision Price," and referred to in the contract as "Supplemental Contract Provisions," provided as follows:

"(a) The prices fixed herein may be increased or decreased in accordance with this Article.

"(b) Times for negotiation.—(1) Upon completion of delivery of forty percent (40%) of the items to be furnished under this contract, the parties shall negotiate to revise the prices of all items theretofore and thereafter to be delivered. Within 5 days after the completion of delivery of said forty percent (40%) the Contractor shall furnish to the Contracting Officer the statements and data referred to in paragraph (c) of this Article. At any time and from time to time after completion of delivery of said forty percent (40%.), subject to the limitations specified in this Article, either the Government or the Contractor may deliver to the other a written demand that the parties negotiate to adjust the prices under this contract. No demand shall be made prior to 90 days after the completion of delivery of said forty percent (40%.) and thereafter neither party shall make a demand having an effective date within 90 days of the effective date of any prior demand, provided, however, that this limitation shall not be applicable in the event that during any 90-day period the War Labor Board or any similar Government agency shall authorize or order a change in wages, salaries or conditions of employment in the plants of the Contractor used in the performance of this contract. Each demand shall specify a date (identical with or subsequent to the date of the delivery of the demand) as of which the revised prices shall be effective as to the deliveries made thereon and thereafter. This date is hereinafter referred to as the "effective date of the price revision." For the purposes of the first negotiation contemplated by this paragraph, the dates of execution of this contract shall be deemed to be the effective date of the price revision. Any demand under this Article, if made by the Contractor, shall state briefly the ground or grounds therefor and shall be accompanied by the statements and data referred to in paragraph (c) of this Article. If the demand is made by the Government, such statements and data will be furnished by the Contractor within 30 days of the delivery of the demand. (2) In the event all remaining work under this contract, as it may from time to time be amended, shall be terminated under Article entitled "Termination at the Option of the Government" no demand shall then or thereafter be made and any demand the effective date of which is less than 30 days before the effective date of such termination shall be void and of no effect.

"(c) Submission of data.—At the time or each of the times specified or provided

for in paragraph (b) of this Article the Contractor shall submit (i) a new estimate and breakdown of the unit cost and the proposed prices of the items remaining under this contract after the effective date of the price revision, itemized so far as is practicable in the manner prescribed by War Department Standard Procurement Form No. 3; (ii) an explanation of the differences between the original (or last preceding) estimate and the new estimate; (iii) such relevant shop and engineering data, cost records, overhead absorption reports and accounting statements as may be of assistance in determining the accuracy and reliability of the new estimate; (iv) a statement of experienced costs of production hereunder to the extent that they are available at the time or times of the negotiation of the revision of prices hereunder; and (v) any other relevant data usually furnished in the case of negotiation of prices under a new contract. The Government may make such examination of the Contractor's accounts, records and books as the Contracting Officer may require and may make such audit thereof as the Contracting Officer may deem necessary.

"(d) Negotiations.—(1) Upon the filing of the statements and data required by paragraph (c) of this Article, the Contractor and the Contracting Officer will negotiate promptly in good faith to agree upon prices for items to be delivered on and after the effective date of the price revision. Negotiations for price revisions under this Article shall be conducted on the same basis, employing the same types of data (including, without limitations, comparative prices, comparative costs, and trends thereof) as in the negotiation of prices under a new War Department contract.

"(2) After each negotiation the agreement reached will be evidenced by a supplemental agreement stating the revised prices to be effective with respect to deliveries on and after the effective date of the price revision (or such other later date as the parties may fix in such supplemental agreement).

"(e) Disagreements.—If within 30 days after the date on which the statements and data are required pursuant to paragraph (b) of this Article to be filed (or such further period as may be fixed by written agreement) the Contracting Officer and the Contractor fail to agree to revised prices, the failure to agree shall be deemed to be a disagreement as to a question of fact which shall be disposed of in accordance with Article entitled "Disputes", and the prices so fixed shall remain in effect for the balance of the contract notwithstanding any other provision of this Article.

"(f) Payments.—Until new prices shall become effective in accordance with this Article, the prices in force at the effective date of the price revision shall be paid upon all deliveries, subject to appropriate later revision made pursuant to paragraph (d) or (c) or (h) (2) (B) of this Article."

In November 1946, before the first delivery of 4% of the overcoats was due under the contract on February 28, 1947, the plaintiff was requested by the contracting officer to reduce the unit contract price, and thereafter on November 27, 1946, plaintiff consented to a modification of the original contract unit price of $22.75 to $21.00. This agreement was entitled "Modification C: Supplemental Agreement to Contract * * * No. 6310." This agreement, which reduced the original contract price by $70,-000, is attached to the petition herein as "Exhibit C". Plaintiff proceeded with the manufacture of the overcoats as provided in the original contract as amended. After more than 90% of the overcoats had been manufactured and delivered, the defendant proceeded to invoke the provisions of Article 14, above quoted, and called upon plaintiff to submit data and information with the view of a further revision downward of the renegotiated price of $21 per garment called for by the contract. Plaintiff prepared and submitted data and information with reference to its costs, etc., and conferences were held. The parties could not agree under Article 14 of the original contract, and the then contracting officer made a determination revising the contract downward and fixing a unit price of $16.65 per garment. Plaintiff protested this action, and appealed to the Secretary of the Army. The Board of Contract Appeals,

acting for the Secretary of the Army, rendered an opinion on June 14, 1948, in which it established a unit price of $15.842. This decision was approved by the Secretary of the Army. Plaintiff brought this suit to recover for the overcoats manufactured and delivered on the basis of the renegotiated price of $21 each, and in its original petition alleged that the decisions of the contracting officer and the Board of Contract Appeals, as a result of which a revised unit price of $15.842 was fixed, were arbitrary and capricious.

The defendant, by leave of the court, filed a counterclaim seeking to recover from plaintiff the sum of $35,792.45, with interest, alleged overpayment to plaintiff on the basis of the revised unit price established by the Secretary of the Army. Also, by leave of the court, the plaintiff filed an amendment to paragraph 19 of its original petition. In the amendment to the petition, plaintiff alleges that "In November of 1946, * * * the contracting officer requested the plaintiff to come to New York, to renegotiate the entire contract, which it did not have to do until on or about July 10th, of the following year. However, the plaintiff did meet with the contracting officer and was told that if there was a renegotiation then, that the then renegotiated price would be the one and final price for the entire contract. The plaintiff, relying upon the statements and representations made to it, agreed and did renegotiate, at a reduced price of $21.00 instead of the contract price of $22.75 per overcoat as previously contracted for, and on November 27, 1946, a superseding agreement was signed for the $21.00 renegotiated price." The amendment to the petition further states that thereafter plaintiff proceeded to perform the contract and after 40% of the overcoats called for had been delivered the contracting officer sent to plaintiff a "Waiver" for submitting data and statements as provided in Article 14 of the original contract, which was in accordance with the statements and representations made to plaintiff at the time of the making

of the renegotiated agreement of November 27, 1946; that on subsequent occasions "Waivers" were sent to plaintiff as deliveries of overcoats progressed, and "That not until plaintiff had completed and delivered over 90% of the contract, was it notified through a source other than the contracting officer, to submit data and statements for a pricing adjustment." The amendment to the petition concludes with this allegation—"Plaintiff further says that the contracting officer falsely made these statements and representations in bad faith, for the purpose of inducing the plaintiff to procure from it the renegotiated contract of November 27, 1946, at a reduction of $70,000 of the original contract when the plaintiff was under no obligation to do so at that time; and to carry out these false statements and representations, the aforesaid waivers were sent waiving the submission of the data provided for in Article 14."

The defendant has filed a motion to dismiss the amended petition on the ground that the revision of the original contract price was provided for in the original contract under Article 14, and that the Supplemental Agreement, known as "Modification C", contained the provision that "The 'Revision of Price' article as contained in the subject contract is not affected by this modification and remains in full force and effect."

We are of the opinion from the allegations made by plaintiff in the original petition and the amendments thereto, that defendant's motion to dismiss must be denied. Plaintiff has alleged fraud throughout its original and amended petitions, and it is entitled to be heard upon those allegations and is entitled to an opportunity to prove them if it has proof to that effect.

The defendant's motion to dismiss the petition as amended is, therefore, denied. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, Judges, concur.